UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

IN RE: DANIEL KEITH STILTNER
      Debtor.
_____

| | |
|---|---|
| MOUNTAIN STATES HEALTH ALLIANCE,<br>    Appellant,<br><br>v.<br><br>DANIEL KEITH STILTNER, et al.,<br>    Appellee. | NO: 2:12-CV-222 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is an appeal from the United States Bankruptcy Court for the Eastern District of Tennessee. The Appellant, Mountain States Health Alliance ("Mountain States" or "Appellant"), appeals the bankruptcy court's April 3, 2012 oral order entered on April 5, 2012, and supplemented by memorandum opinion entered on May 17, 2012, overruling and denying Mountain States' objection to the claim of exemption filed by debtor, Daniel Keith Stiltner ("debtor" or "Stiltner") related to a state medical malpractice claim. The matter has now been fully briefed by the parties, [Docs. 4, 5 and 6], and is ripe for disposition. For the reasons which follow, the bankruptcy court's order will be AFFIRMED.

**I. Factual and Procedural Background**

The debtor commenced this Chapter 7 case by the filing of a voluntary petition on January 21, 2011, a filing which was precipitated by almost $400,000 in uninsured medical expenses resulting from kidney surgery complications that left him without a functioning kidney, dependent

upon dialysis, and disabled from meaningful employment. Prior to his bankruptcy filing, the debtor had retained personal injury attorney Bob McDaniel Green to represent him in a medical malpractice lawsuit against, among others, Johnson City Medical Center. By letter dated November 8, 2010, Mr. Green gave notice to Johnson City Medical Center and various medical providers that the debtor would be pursuing a medical malpractice claim against them, although no suit was filed before the bankruptcy filing. Filed along with the bankruptcy petition, the debtor's "Schedule B-Personal Property" did not list the medical malpractice claim nor did the debtor seek to claim an exemption related to the claim. The debtor scheduled Johnson City Medical Center, owned and operated by Mountain States, as a creditor for five different claims, totaling approximately $272,000.

The 11 U.S.C. § 341(a) meeting of creditors was scheduled and held on February 23, 2011. At the meeting of creditors, the debtor voluntarily disclosed to the Trustee in bankruptcy, Mary F. Russell, (the "trustee"), the existence of the potential medical malpractice claim. At the meeting of creditors, debtor could not recall the name of the attorney he had retained and was unsure if the attorney had determined whether his medical malpractice claim was a viable claim and could be pursued. The debtor and his attorney agreed to provide the name of the medical malpractice attorney to the trustee, and did so the following day. The debtor continued to apprise the trustee of developments concerning the claim, including the filing by Mr. Green on his behalf of a medical malpractice complaint in the Circuit Court for Washington County, Tennessee on May 6, 2011.

On December 7, 2011, the debtor filed amended schedules B and C which listed, and claimed an exemption of $7,500 in, a "[p]otential medical malpractice claim against Bill Boswell, MD, David Jones, MD, East Tennessee Urologic Associates, and Johnson City Medical Center" with an "[u]nknown" value. On March 7, 2012, Mountain States filed an objection to the debtor's claimed

exemption and to the debtor's right to share in any surplus from the medical malpractice suit on the grounds of judicial estoppel. A hearing was held in the bankruptcy court on April 3, 2012, and the bankruptcy court issued an oral opinion from the bench that judicial estoppel was inapplicable to bar the debtor's exemption claim in the state court lawsuit and the order was entered overruling the objection on April 5, 2012. It is from this order that Mountain States appeals. The debtor was discharged on April 29, 2011.

The debtor testified at the April 3, 2012 hearing that he discussed the medical malpractice claim with his bankruptcy attorney, Thomas Banks, before signing and filing his petition and schedules. Mr. Banks concluded, however, apparently erroneously, that the statute of limitations had run on the claim and did not list it in the debtor's schedules. The debtor testified that the failure to list the claim in his original schedules was due to mistake, that he subsequently voluntarily corrected his mistake through his sworn testimony at his meeting of creditors, that the trustee was fully apprised of the existence of the claim, and that no creditors were prejudiced by the initial omission. The trustee fully supported the debtor's position and has subsequently been substituted as the real party in interest in the state medical malpractice action. At the conclusion of the April 3 hearing, the bankruptcy court concluded that the debtor's failure to include his personal injury claim in his original schedules was the mistake of the debtor's counsel who advised that there was no need to list the claim because it was more than one year old, that the failure to originally disclose was "neither bad faith, nor an intentional concealment of property," and that debtor's testimony was "highly credible."

## II. Standard of Review

A district court reviews a bankruptcy court's findings of fact, whether based upon oral or

3

documentary evidence, for clear error. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.), *cert. denied*, 522 U.S. 816 (1997). A factual finding is clearly erroneous when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Clear error also exists when factual findings are made without properly taking into account substantial evidence to the contrary. *Indmar Products Co., Inc. v. C.I.R.*, 444 F.3d 771, 778 (6th Cir. 2006).

A factual finding is not to be disturbed unless there is "most cogent evidence of mistake or miscarriage of justice." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988) (citing *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1997)). Further, due regard is to be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. *Id.* Finally, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case . . . for the necessary factual determination." *Id.* (quoting *In re Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988)).

A district court reviews a bankruptcy court's conclusions of law *de novo*. *Baker & Getty*, 106 F.3d at 1259. *De novo* review requires the district court to review questions of law independent of the bankruptcy court's determination. *In re Eubanks*, 219 B.R. 468, 469 (6th Cir. BAP 1998). If the bankruptcy court's conclusion raises a mixed question of law and fact, the district court breaks the question into its constituent parts and applies the appropriate standard of review for each. *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993).

### III. Analysis

### A. Issue

Mountain States frames the issue as: "Whether the debtor is judicially estopped to claim an exemption or an interest in any surplus proceeds of a cause of action that was not scheduled on the debtor's statement of affairs or bankruptcy schedules [?].

### B. Judicial Estoppel

A three-prong test has been adopted in this circuit for judicial estoppel in the bankruptcy context. *See Browing v. Levy*, 283 F.3d 761 (6th Cir. 2002). "Under that test, judicial estoppel bars a party from (1) asserting a position that is contrary to one he asserted under oath in a prior proceeding; (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the party's conduct was not inadvertent." *Stephenson v. Malloy*, 700 F.3d 265, 267 (citing *Browning* at 775-76). *Browning* identified two circumstances under which the debtor's failure to disclose a cause of action might be deemed inadvertent: first, "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and second, "where the debtor has no motive for concealment." *Id*. (quoting *Browning* at 776). *White v. Wyndham Vacation Ownership, Inc*., 617 F.3d 472 (6th Cir. 2010), added a bad-faith inquiry to the inadvertence prong of *Browning*'s judicial estoppel test. *See id.* at 478.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).. The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according

5

to the exigencies of the moment." *Id*. at 749-50. Utilization of the doctrine preserves "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). In determining whether a debtor has acted in bad faith, the court also must look to the debtor's attempts to advise the bankruptcy court of the omitted claim. *White*, 617 F.3d at 478. *See also Lewis v. Weyerhaeuser Co.*, 141 Fed. App'x 420, 426 (6th Cir. 2005) ("Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional.") (discussing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir. 2004)).

Mountain States first criticizes the bankruptcy court for declining to rule on whether the debtor is estopped from participating in any surplus proceeds from the malpractice case, although Mountain States does not appear to challenge the bankruptcy court's failure to rule on that aspect of the motion in this appeal. Mountain States does argue, generally, however, that judicial estoppel should apply because the debtor "[a]fter receiving his discharge and commencing the state court litigation, he is returning to the Bankruptcy Court to assert the exemption rights and the right to surplus proceeds provided under the Bankruptcy Code." The import of appellant's argument is lost on the Court and apparently results from a misunderstanding of the sequence of events in the bankruptcy court. As the Bankruptcy Judge found, the debtor informed his bankruptcy attorney prior to the filing of the bankruptcy case of the existence of the claim and, more importantly, the existence of the potential malpractice claim was disclosed to the trustee at the meeting of creditors which was held on February 23, 2011, thirty-three days after the filing of the petition. The debtor

6

was discharged in bankruptcy on April 29, 2011. This Court agrees with the bankruptcy court that "[t]o the extent that [the bankruptcy] court adopted any position of the Debtor by entering the discharge order it was the position previously disclosed by the Debtor at his meeting of creditors that he had a potential medical malpractice claim." It is clear, then, that the bankruptcy court never adopted a contrary position of the debtor, even if the failure of the debtor to list the potential malpractice claim on his initial schedules can be considered to be the taking of a position contrary to his later position with respect to his exemption.

Mountain States also argues that the bankruptcy court's finding that the debtor's failure to disclose was a mistake or inadvertence was erroneous, arguing that the debtor knew of the factual basis of the undisclosed claims because he had consulted with a personal injury attorney in November, 2010, because he had a motive for the concealment, e.g., to shield the proceeds from the claims of creditors, and that the debtor acted in bad faith. While it is true that the debtor knew about his potential malpractice claim prior to the filing of his bankruptcy petition, it cannot reasonably be said that the debtor's failure to disclose that information to the bankruptcy court 33 days earlier than he did so establishes a motive for the concealment or any bad faith on his part. As the bankruptcy court noted, the primary target of the debtor's potential malpractice claim, Mountain States, is also the debtor's largest creditor. It is illogical, as the bankruptcy court found, "for the Debtor to believe that he could conceal the lawsuit from his bankruptcy case and his creditors." It is simply inconceivable that the debtor would have believed that he could somehow protect the proceeds of a malpractice judgment against Mountain States from Mountain States as a creditor of his bankruptcy estate. In any event, the debtor fully disclosed the existence of the potential claim to the trustee, who after all was acting in the interest of creditors, at the meeting of creditors on February

7

23, 2011. The debtor's action at the meeting of creditors negates any claim of a motive for concealment.

As noted above, the Sixth Circuit has advised that a debtor's efforts to subsequently disclose an omitted claim is an important factor in determining a debtor's good faith and that "the extent of these efforts, together with their effectiveness," *White*, 617 F.3d at 480, are important for judicial estoppel purposes. It is ironic that Mountain States is attempting to prevent the trustee from recovering the only potential asset from which its claim might be paid by cynically attempting to avoid the consequences of its alleged medical malpractice. Simply put, the debtor's disclosure of his potential cause of action to his bankruptcy attorney, his reliance on his bankruptcy attorney's advice, his timely disclosure of the existence of a potential claim at the meeting of creditors, and his continued cooperation with the trustee relative to the claim all sufficiently negate any potential finding of bad faith which might be implied from the simple failure to list the potential claim on the initial schedules filed with the bankruptcy petition.[1]

Finally, the Court needs to address one other issue, alluded to above. In the brief of Mountain States before this Court, Mountain States argues that the debtor "should not be permitted to amend his bankruptcy schedules at the eleventh hour in order to claim an exemption and receive any surplus distributions from the administration of the bankruptcy estate." As noted above, this is not an issue specifically raised in Mountain States' notice of appeal. More importantly, however, it is an issue not raised before the bankruptcy court. As noted by the Bankruptcy Judge, Mountain

---

[1] Mountain States does suggest that although the debtor's disclosure of the potential malpractice claim was at a public meeting and was under oath, "not all creditors attend these meetings." Even assuming Mountain States was not represented at the meeting of creditors, it certainly had notice of that meeting and could have attended, especially since it already had actual notice of the existence of the potential claim. In any event, it is the debtor's "affirmative steps to fully inform the **trustee** and the **bankruptcy court** of the actions" that are important. *Eubanks* does not place significance on the knowledge of any particular creditor.

8

States' "objection to the Debtor's claimed exemption was not premised on Rule 1009 or any argument that the amendments themselves should be stricken." As a general rule, a reviewing court will not consider issues raised for the first time on appeal. *See e.g., Poss v. Morris* (*in re Morris*), 260 F.3d 654, 663 (6th Cir. 2001); *Michigan Nat'l Bank v. Charfoos* (*in re Charfoos*), 979 F.2d 390, 395 (6th Cir. 1992); *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1998). Only exceptional circumstances may warrant a departure from the general rule. *Poss*, 260 F.3d at 663-664; *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993). No extraordinary circumstances exist here and this Court will not consider an issue not raised before the bankruptcy court.

In any event, the bankruptcy court correctly noted that Federal Rule of Bankruptcy Procedure 1009 provides that "[a] voluntary petition, list, schedule, or statement may be amended by a debtor as a matter of course at any time before the case is closed." Fed. R. Bankr P.1009. Absent bad faith or concealment of property, a bankruptcy court lacks the discretion to reject a proposed amendment, including an amendment to a list of exempt property, made before the case is closed. *See Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). In the instant case, the debtor's bankruptcy case remains open and has never been closed. As noted above, there is no evidence that the debtor has acted in bad faith or motivated by a desire to conceal his possible malpractice claim. Thus, even if the issue had been properly raised before the bankruptcy court, the amendment, as a matter of course, was permitted by the rule.

### IV. Conclusion

For the reasons set forth herein, the bankruptcy court made no factual findings which are clearly erroneous nor were any of the bankruptcy court's legal conclusions erroneous and the

bankruptcy court's order will be AFFIRMED and the appeal of Mountain States DISMISSED. The Clerk is DIRECTED to TERMINATE this appeal.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE